# CHARLESTON.

OHIO VALLEY BUILDERS SUPPLY COMPANY *v.* WETZEL CONSTRUCTION COMPANY *et als.*

(No. 6432)

Submitted November 5, 1929. Decided December 17, 1929.

*Willis & Ball* and *Larrick & Lemon,* for appellants.
*W. J. Postlethwait* and *E. H. Yost,* for appellee.

MAXWELL, JUDGE:

In June, 1926, Wetzel Construction Company, a corporation, entered into a contract with the West Virginia State Road Commission to build and complete, according to plans then on file in the office of the said Commission, a public road in the county of Pleasants, State of West Virginia, known as the St. Marys-Wood County Line Road Project No. 3078-B. Thereupon, the said construction company entered into a contract with the Ohio Valley Supply Company, a corporation, whereby the said supply company was to do the concrete work and certain excavating at prices specifically set forth in said agreement. This latter agreement was formally entered into pursuant to an arrangement that had been made between the two companies prior to the time that the construction company submitted its proposal to the State Road Commission and was awarded the contract. Under the preliminary arrangement the supply company set forth and tabulated the prices at which it would undertake to do the concrete work and other work which it later contracted to do, and its said figures were carried by the construction company into its proposal to the State Road Commission. Thus, though the supply company was not known in the contract between the construction company and the Road Commission, it was directly interested therein. The supply company therefore comes into this litigation not as a sub-contractor of the construction company, but more strictly as a co-adventurer with it in the undertaking.

The work was entered upon by both companies, each concerning itself about the portions of the work, which, pursuant to the arrangement between them, it was to be responsible for. On the 16th day of September, 1926, H. E. Snyder, division engineer of the State Road Commission, by written notice, required the Wetzel Construction Company to remove from the job for alleged incompetence, J. E. Yoho, who was the supply company's superintendent on the ground in charge of the work which it had undertaken. The division engineer's notice pertained only to Yoho, but the construction company says that its understanding from the engineer at the time was

that he was meaning to require discharge not only of Yoho but of his principal, the supply company. At any rate the construction company gave the matter the latter construction and not only dismissed Yoho but forthwith assumed entire responsibility for the completion of the supply company's portion of the job as well as of its own portion. In due time it discharged the entire contract by completing all the work required under it.

It is contended by the construction company that on the 18th of September, it effected an arrangement with the supply company by which the construction company in proceeding with the completion of the portion of the work which the supply company had undertaken was to use the supply company's equipment and material on the ground, was to keep a separate account of the cost of the completion of the supply company's portion of the work, and when it should be completed, the profit, if any, on that portion of the work was to be paid to the supply company, and if there was a loss the bond of the supply company would be proceeded against. That any such arrangement was made is denied by the supply company, and the finding of the trial chancellor would seem to sustain such denial. We are of opinion, however, that the evidence on this point preponderates in favor of the contention urged by the construction company, though we do not deem it necessarily controlling of the controversy.

On the 9th day of October, 1926, the supply company caused a notice to be served on the construction company charging the construction company with having breached the contract between the two companies by terminating the supply company's connection with the work on September 16th, and making demand of the construction company for the total cost of all work done, materials furnished and money expended by and on behalf of the supply company up to and including the 16th day of September. The said notice was accompanied by an itemized account showing a total of nearly $17,000.00 claimed. This claim was ignored by the construction company.

On the 14th day of October, 1926, the Wetzel Construction Company executed to M. H. Willis, trustee, a deed of trust

on certain machinery and equipment therein itemized, to secure the First National Bank of New Martinsville, payee, and T. A. Shuman, N. G. Myers and I. Myers, endorsers, in the payment of two promissory notes aggregating $9,700.00, one of said notes being dated the 4th day of September, and the other dated the 14th day of October, 1926. It is in evidence that the notes were given for money borrowed by the construction company from the bank for the purpose of use on the work of construction herein involved.

The supply company instituted this suit at January rules, 1927. There are a bill, supplemental bill and second supplemental bill. It is alleged, *inter alia*, that the supply company was not at fault; that the construction company breached the contract between the two companies by supplanting the supply company on the job on the 17th of September; that about $17,000.00 was due to the supply company from the construction company for the use of machinery and equipment, and for material used and labor expended by the supply company up to the 17th day of September; that the construction company was insolvent at the time it executed the aforesaid deed of trust on the 14th of October, and that consequently the said trust constituted a fraudulent preference. The major prayer was for a decretal judgment for the amount claimed by the plaintiff to be due to it from the construction company, and for cancellation of the said deed of trust in so far as it constituted a preference among the creditors of the construction company. By answer the construction company denied liability to the supply company except in comparatively small amount as hereinafter more fully noted, and denied that it was insolvent or that it attempted to create a preference among its creditors. A mass of depositions was taken. By decree entered the 12th day of September, 1928, the trial court found the construction company to be indebted to the supply company in the sum of $12,554.94 with interest from the date of said decree, and further found that the said deed of trust was made by the construction company to hinder, delay and defraud its creditors, and especially the supply company. In addition to a decretal judgment for the amount aforesaid, the decree set.

aside and held for naught the said deed of trust in so far as the demand of the supply company was concerned. From that decree the Wetzel Construction Company, First National Bank of New Martinsville, T. A. Shuman, N. G. Myers and I. Myers prosecute this appeal.

In our opinion, the evidence does not sustain the allegation of the plaintiff's bill that the construction company was insolvent at the time of the execution of the said deed of trust on the 14th day of October, 1926.

The financial statement filed by H. Koontz, secretary-treasurer of the construction company, showing the resources and liabilities of the construction company as of October 14, 1926, may be taken as a basis determinative of this issue. The supply company raised only two objections to it, and they can be considered seriatim and in detail.

The first objection is that the statement does not undertake to account for the depreciation of the machinery owned by the construction company, a large part of which is covered by the deed of trust. The statement lists at $31,203.22 the original cost of the machinery based on previous financial statements, giving the date of purchase and uncontroverted as to those items. Of this, the deed of trust covered equipment to the amount of $29,847.22. W. J. Williamson, testifying for the supply company, estimated the value of this equipment as $8,000.00. Under cross-examination he admitted that he never dealt in road machinery, was not well acquainted with the price thereof, had not examined the machinery in question, and that his information came from other men. C. H. Rice, a road contractor, likewise testifying for the supply company, gave various estimates as to the worth of used machinery generally, but it nowhere appears that he was testifying from actual knowledge of the construction company's equipment. S. B. Lasure, a one-time stockholder in the supply company, introduced an inventory of the machinery of the construction company as of the years 1923-1924. This had been prepared by H. Koontz, dated December 31, 1924, and showed an approximate depreciation of fifty per cent on the equipment. Lasure testified that he was acquainted with the properties of the construction company

at that time (1924) and that this estimate "wouldn't be much out of the road." It is upon the testimony of these three men that the supply company bases its estimate of the depreciation of the machinery under consideration.

For the construction company the claim is made that the total value of the equipment as of October 14, 1926, was at least $15,000.00. To substantiate their claim, which they say is conservative, an abundance of testimony is presented. James S. Rodney, president and manager of the West Virginia Mining Supply Company of Clarksburg, testified that he is familiar with road machinery, in fact buys and sells second-hand equipment, and had sold to the construction company some of the equipment under consideration. Along with E. C. Bramham, a widely experienced road constructor, Rodney made an examination of the machinery in question and arrived at a value of $18,245.00. Bramham's estimate is $18,000.00. Ingram Myers places his estimate at $22,-000.00 or $23,000.00. Neason Myers testifies as to the individual articles of equipment as of October 14, 1926, and the aggregate comes to around $18,000.00. H. Koontz, in preparing the above mentioned financial statements, listed the articles of equipment, their original cost and date of purchase, but left the amount of depreciation in value for others to figure. From all of this it would appear that $15,000.00 was not too high a valuation to place on all the equipment on October 14, 1926.

The second objection to the statement was that it did not debit the construction company with the amount of the claim of the supply company. The trial chancellor reduced the supply company's claim to $12,554.94. By our decree, as hereinafter fully developed, the supply company is to receive $462.10, or the amount originally ascertained by the construction company, with interest, totaling $529.10. Therefore, in determining whether at the time of giving the deed of trust the construction company was solvent we cannot consider its indebtedness to the supply company greater than the said last named amount.

In the light of these observations as to the probable value of the construction company's equipment and the indebted-

ness owing the supply company, let us again have recourse to the statement as of October 14, 1926. Listed assets, aside from equipment, $32,040.86. Valuation of equipment, as above approximated, $15,000.00. Total, $47,040.86. Listed liabilities, other than debt owing supply company, $25,100.45, which sum includes the income tax arrears of 1924 and 1925. Lawful claim of supply company, $529.56. Total liabilities, $25,629.55. We are not attempting to be exact in these figures, but they demonstrate that the charge of insolvency was not well grounded.

The evidence of disinterested witnesses, including the division engineer of the State Road Commission, an assistant engineer, and two inspectors employed by the Commission, is that because of inefficiency on the part of Yoho, and perhaps of others on the job, and because of insufficiency and inadequacy of equipment, the supply company was not properly functioning on the job; that on the 16th of September, it was far behind with its work. One of the inspectors in testifying about the supply company's work stated that it was "the poorest managed job I ever had any experience with or saw." The supply company's contention that it would have completed its portion of the work by the first of November, 1926, being the time fixed for completion by the contract entered into between the State Road Commission and the construction company, is not very convincing in the light of the fact that the construction company, after it took over the work, was unable to complete it by that date, it not being questioned in the record that the construction company carried the work along in expeditious manner after it took full charge thereof.

The trial chancellor's direct finding of fact that the construction company created a preference by the deed of trust of October 14, 1926, (which necessarily included at least an implied finding of insolvency, though not expressly stated in the decree), and the indirect finding of fact that the construction company breached the contract between the two companies, are not in our opinion in accord with the plain preponderance of the whole evidence. We, therefore, do not

accept and follow those findings. *Myers* v. *Land Co.,* 107 W. Va. 632, 149, S. E. 819.

Did the trial court employ the proper basis in fixing liability of the construction company to the supply company? The amount of the decretal judgment is based on liabilities incurred by the supply company in connection with the contract up to the time that it was supplanted on the job. These obligations or expenditures are set out in the decree in detail. In adopting that basis, the trial court evidently employed the principle of law which was recognized and applied in the case of *Berry* v. *Masonic Temple Association,* 80 W. Va. 342, wherein point five of the syllabus reads: "A contractor under a building contract who, after having performed a portion of the contemplated work, is prevented from completing the same by the owner, or is justified in his abandonment thereof, by a breach of the contract by the owner, may recover not only the value of the labor and materials bestowed upon the property and expenses necessarily incident to the work done and provided for in the contract, but also such profits as he could have made, if permitted to complete the work." In that case the Court held that the contractor was not at fault, but that the Temple Association was at fault in terminating the contract. For the principle employed in that case to be applied here there would have to be a finding not only that the construction company breached the contract, but, also, that the supply company was in position to complete the contract in compliance with the terms thereof. We cannot make that finding because we think the evidence and circumstances, already adverted to, not only show that the construction company did not breach the contract, but, also, that the supply company, at the time it was supplanted on the job, had conducted its affairs in connection with the contract in such inefficient manner that a heavy loss by it must necessarily be suffered. The breach must be laid at the door of the supply company. To permit it now to recover for its expenditures would be to place it in a favored position at the expense of its more efficient co-adventurer. No principle of equity or of common law damages would justify such result.

It is in evidence by the construction company, that the

total amount paid by the State Road Commission for the work undertaken by the supply company was $19,915.10, and that after deducting from said amount the sum of the payments made to the supply company and the cost of completing its portion of the work, there remained a balance of $462.10, for which latter amount the construction company admits liability to the supply company. This admission is, of course, predicated by the construction company upon what it conceives to have been the arrangement (hereinabove referred to) made between it and the supply company after the construction company took over the work on the 17th of September, 1926.

Whether we approach this matter of basis of adjustment from the angle of a supplemental agreement between the two companies, subsequent to the 16th of September, 1926, as contended for by the construction company, and which the evidence tends strongly to support, or whether we make the approach from a forced viewpoint that the construction company wrongly supplanted the supply company on the job and thereby breached the contract between the two companies, the result is the same. If the contract theory is adopted the terms of the adjustment are fixed by the contract itself as testified to by representatives of the construction company and hereinabove set forth. On the other hand, if it be considered that there was a breach of the contract by the construction company, the supply company is only entitled to such damages as would put it in as good position as it would have been in if there had been no breach. It is not entitled to be put in a better position than it had itself brought about and created. It is axiomatic that the fundamental principle of damages is compensation to the injured party. ''The measure of damages in the case of a breach of contract is the amount which will compensate the injured person for the loss which a fulfillment of the contract would have been presented or the breach of it has entailed. In other words, the person injured is, so far as it is possible to do so by a momentary award, to be placed in the position he would have been in had the contract been performed. But a plaintiff is not to be put in a better position by a recovery of

damages for the breach of a contract than he would have been in if there had been performance. Another statement o fthe rule is that, where one party to a contract repudiates it, the other party is entitled to recover the value of the contract to him at the time of its breach. However, while the general principles are readily formulated, no rule can be laid down which will in all cases give them effect.'' 17 Corpus Juris, p. 847. In the case of *Belcher* v. *King et als.,* 96 W. Va. 562, which was an action for damages for the breach of a contract for the manufacture of timber into lumber, the rule is very tersely stated in the body of the opinion at page 572, as follows: ''The measure of damages in executory contracts of this character which have been breached is the difference between what the performance of the contract would have cost and the price which the defendant had agreed to pay, the cost of performance to be estimated by the price of labor and materials at the time of the breach and not any subsequent time.''

The only cross-assignment of error which it is necessary for us to consider in the light of our view of the whole case, as above set forth, is the claim of the supply company that it is entitled to be compensated by the construction company for its use of the supply company's tools and equipment which were left on the job by it after the construction company took charge on September 17, 1926. It is testified to on behalf of the supply company that a fair rental value of the said tools and equipment was $10.00 a day. Claim is made for rental at that rate from September 17, 1926, to July 11, 1927, aggregating $2,940.00. We are unable to perceive on what meritorious theory it could be said that the supply company is entitled to rental for the use of this machinery by the construction company in the light of the arrangement which obtained between those two companies with reference to this contract job which they undertook together. The companies were joint adventurers. The contract with the State Road Commission was for the benefit of both companies. Under the arrangement between them each was charged with its distinct responsibilities in the

furtherance of the work. When the supply company failed to measure up to its share of the responsibilities, the construction company, being primarily responsible to the State Road Commission, took over the supply company's portion of the work and used the supply company's equipment for the supply company's benefit. It was the supply company's primary duty to furnish the equipment necessary for its portion of the undertaking, and after having placed equipment on the job, it is none the worse off because of that equipment's having been used for its benefit by the construction company than if it, the supply company, had used it itself. We, therefore, approve the action of the circuit court in disallowing this claim.

In the light of all of which we reverse the decree of the circuit court and will enter a decree here in favor of the supply company against the construction company for the sum of $529.56, being in full of the aforesaid sum of $462.10, with interest thereon from July 11, 1927, until this date, allowing to the supply company its costs in the circuit court and allowing to the appellants, as the parties substantially prevailing here, their costs on this appeal.

*Reversed; decree here.*