Emil ANDERSON, (Plaintiff) Appellant,

v.

John STEURER, Jr., (Defendant) Respondent.

No. 50584.

Supreme Court of Missouri,

Division No. 2.

June 14, 1965.

Motion for Rehearing or to Transfer to Court En Banc Denied July 12, 1965.

Mogab & Hughes, by Richard L. Hughes, St. Louis, for appellant.

Robertson, Baker & De Voto, Leo C. De Voto, Jr., St. Louis, for respondent.

FINCH, Judge.

This is an appeal from a summary judgment entered by the trial court in favor of defendant. We have jurisdiction because the prayer of the petition sought $120,-000.00.

The plaintiff, Emil Anderson, a lather employed by the George Stroup Lathing Company, was injured when a scaffold collapsed. The scaffold and its boards were furnished by the defendant, John Steurer, Jr., a plastering contractor. In his fourth amended petition plaintiff sought damages for his personal injuries, alleging that defendant was guilty of several specific acts of negligence, particularly in connection with the furnishing of the plank that broke and precipitated plaintiff's fall. Defendant pleaded contributory negligence, but also alleged that plaintiff was the employee of a subcontractor doing work on or about the premises where the principal contractor was doing work and was a statutory employee of this defendant. After certain requests for admissions by both parties and submission of interrogatories and the taking of various depositions, including depositions of defendant Steurer, George Stroup of the lathing company, and a representative of the general contractor on the job, defendant filed his motion for summary judgment un-

der Civil Rule 74.04, V.A.M.R. In substance, the motion contended that there was no dispute as to any material fact, that plaintiff was a statutory employee of defendant, and that plaintiff's exclusive remedy, in so far as defendant was concerned, was under the Workmen's Compensation Act, in view of § 287.120 (all references are to RSMo 1959, V.A.M.S., unless otherwise indicated). Under that section an employer subject to the act is liable for compensation but is "released from all other liability therefor whatsoever, whether to the employee or any other person."

Certain facts are not in dispute. The George Moeller Construction Company, hereinafter referred to as Moeller, had a general contract to construct a church for the Mount Tabor Evangelical and Reformed Church. Moeller entered into a written subcontract with John Steurer, Jr., hereinafter referred to as Steurer, for the lathing and plastering work on the church. Both Moeller and Steurer operated under the Workmen's Compensation Act and Steurer furnished certificates of compensation insurance to Moeller. Another contractor, George Stroup Lathing Company, hereinafter referred to as Stroup, actually performed the lathing work on the job for Steurer. Steurer then did the plastering. The premises where the work was performed did not belong to Moeller, Steurer or Stroup. Stroup also operated under the Workmen's Compensation Act and carried compensation insurance. Compensation ($8,659.29 plus medical expenses of $2,098.-19 up to November 14, 1963) was paid by that carrier to plaintiff, who then brought his suit against Steurer as a third party whose alleged negligence resulted in plaintiff's injuries.

The case is briefed in this court by defendant on the theory that the proof was unassailable that Moeller was the general contractor, that Steurer was a subcontractor under Moeller to do the lathing and plastering, that Steurer in turn subcontracted the lathing to Stroup, and that plaintiff was an employee of Stroup. If this were true, then we would have presented squarely for decision the question of whether an intermediate subcontractor in such a direct chain of relationship would have the same exempt status as statutory employer from third party negligence actions as the general contractor occupies under the doctrine of the case of Bunner v. Patti, 343 Mo. 274, 121 S.W.2d 153. However, plaintiff strenuously asserts that there was a genuine issue as to the relationship between Steurer and Stroup. He contends that there was a basic issue of fact as to whether plaintiff's employer, Stroup, was a subcontractor of defendant Steurer, or whether there was a joint adventure of these two contractors. This calls, first, for a careful analysis of the evidence before the trial court on that issue.

The evidence as to the actual relationship between Steurer and Stroup was as follows: Plaintiff's fourth amended petition alleged that Stroup was a subcontractor doing lathing work and that Steurer was a subcontractor doing plastering work, and that both were hired by Moeller, the general contractor. This latter contention is denied by Steurer, and there was nothing in any of the depositions or admissions to indicate that Moeller hired or directly contracted with Stroup. Steurer, in his deposition, testified that customarily in their work the plastering contractor contracts for both lathing and plastering. He said that Stroup had been doing all of the lathing for him on his commercial jobs for several years. He would call on Stroup for a price for the lathing on a particular job, and Steurer then would bid the job with his bid covering both lathing and plastering. If Steurer's bid was low, he would get the job. Stroup then would go ahead and do the lathing. Payment from the general contractor would come to Steurer in one check and he then would pay Stroup. Steurer testified that this was a subcontracting operation, and he had no right to control Stroup or his men. Stroup, in his deposition, testified that he had an oral

contract with Steurer to perform the lathing work on the Mount Tabor job, the agreement being made about one year before March 1, 1960. That would have been prior to the contract of June 2, 1959, between Moeller and Steurer. Stroup further testified that Steurer usually would call him before bidding a job, and Stroup would take the job off the plans and specifications and prepare an estimate. Steurer then would compile his estimate and put the estimates together and send in a bid. With reference to payment, Stroup said that the practice was for him to work a month, prepare an estimate and then send it to Steurer. He was to be paid in thirty days. Any time Steurer has been paid, Stroup has been paid. As a rule, he said, when Steurer isn't paid by the general contractor, Stroup is not paid, although he had known of times when he pressured Steurer and the latter paid him before payment by the general contractor to Steurer. Stroup said that on this Mount Tabor job he would not have expected pay from Steurer if there had been no payment by Moeller to Steurer. Stroup testified further that if there were any complaints about his work or corrections to be made, Steurer would contact him and he then would handle his men.

Steurer contends that this evidence shows by unassailable proof that Stroup was a lathing subcontractor under Steurer. On the other hand, plaintiff contends that this is not true and that there is a genuine issue of fact as to whether there might be a joint adventure between Steurer and Stroup rather than a situation in which Stroup was a subcontractor of Steurer.

■ The rule is well established that we must view the record on motion for summary judgment in the light most favorable to the party against whom the judgment is rendered. Cooper v. Finke, Mo., 376 S.W. 2d 225, 228 [2]. A summary judgment is a drastic remedy and great care should be exercised in its utilization. Cooper v. Finke, supra, 229 [3].

Is there unassailable proof of a subcontractor relationship? Stroup testified that he had an oral contract with Steurer for the lathing. Steurer said that he had a subcontract with Stroup. Neither, however, undertook to testify as to any details of the arrangement. They testified to some extent as to customary general practice, but did not undertake to testify as to what this specific agreement was with reference to the amount Stroup was to be paid, how and when it was to be paid, whether Steurer required Stroup to carry compensation insurance, whether there was any sharing of profits or losses, or what the agreement was as to whether payment by Steurer to Stroup was contingent on receipt of payment by Steurer from the general contractor. Stroup testified that he, on request, submitted an estimate figure to Steurer and had a contract for the work even before Steurer received the job. He was not asked, nor did he explain what happened if Steurer was not the successful bidder. Steurer referred to receiving a bid from Stroup. He did not undertake to testify as to whether this was simply a bid subject to acceptance if and when Steurer received the contract.

As indicated above, plaintiff urges that there was sufficient evidence in the record from which it could be found that Stroup was a joint adventurer with Steurer. He cites some cases as supporting this position, the nearest of which on the facts is Ohio Valley Builders Supply Co. v. Wetzel Construction Co., 108 W.Va. 354, 151 S.E. 1. He then contends that a summary judgment should not have been entered, and that the question of fact as to whether Stroup was a subcontractor or a joint adventurer should have been triable by jury.

■ Upon this state of the record, we are unable to say that there was unassailable proof as a matter of law that Stroup was a subcontractor of Steurer. The facts as developed indicate a subcontract, but there is the possibility, as plaintiff contends, that a development of all the facts might be sufficient to show the existence of a joint

adventure between the two parties. Plaintiff's brief also mentions the possibility that Stroup was a subcontractor to the general contractor, but there is no evidence whatsoever to support this contention. Under these circumstances, we normally would reverse and remand this case for trial. However, as hereinafter set out, we have concluded that plaintiff is not entitled to maintain this common law action against defendant as a negligent third person, regardless of whether Stroup was a subcontractor of Steurer or whether a joint adventure existed between them. Under those circumstances, it would serve no useful purpose to reverse and remand this case for trial.

■ If we accept the contention of plaintiff that Stroup and Steurer were engaged in a joint adventure, it seems clear that plaintiff could not maintain a third party action against Steurer. A joint adventure has been stated to be in the nature of a partnership, governed by the same rules, but differing in that it usually is limited to a single transaction. Gales v. Weldon, Mo., 282 S.W.2d 522; Shafer v. Southwestern Bell Tel. Co., Mo., 295 S.W.2d 109. In Missouri we usually follow the aggregate or common law theory rather than the entity theory as to partnerships. McKinney v. Truck Insurance Exchange, Mo.App., 324 S.W.2d 773, 776. This means that an employee of a partnership is also an employee of each individual partner. Brollier v. Van Alstine, 236 Mo.App. 1233, 163 S.W.2d 109 [4]. Assuming that Steurer and Stroup were joint adventurers, the application of the above doctrine regarding partnerships to the instant case would mean that plaintiff was an employee of Stroup *and* an employee of Steurer. Under those circumstances, plaintiff could not maintain an action for damages against his employer, Steurer, as a negligent third party. Liability would be under the Workmen's Compensation Act exclusively. § 287.120. We do not find where this question has been passed on specifically in Missouri, but it has been so ruled in other states which follow the aggregate

rather than the entity theory of partnerships. Parker v. Zanghi, 45 N.J.Super. 167, 131 A.2d 802, 806; Williams v. Hartshorn, 296 N.Y. 49, 69 N.E.2d 557; Klein v. Pepe (Sup.) 99 N.Y.S.2d 794.

If the arrangement between Steurer and Stroup was not that of a joint adventure, then it was a subcontract arrangement between them, as claimed by Steurer and not disputed by Stroup. Steurer then would be an intermediate subcontractor between Moeller, the general contractor, and Stroup, the lathing subcontractor, and we would have presented the question of whether such an intermediate subcontractor is subject to suit by the employee of his subcontractor as a negligent third party, or whether he (Steurer) under the statute is exempt from such suit as a statutory employer.

■ The law has been well settled in Missouri since the case of Bunner v. Patti, 343 Mo. 274, 121 S.W.2d 153, that under the Missouri Workmen's Compensation Law, the employee of a subcontractor may not sue the general contractor as a negligent third party for negligence resulting in an "on-the-job" accident and injury to the employee. The general contractor in that situation is a statutory employer of the injured employee under § 287.040. Plaintiff asserts that Bunner v. Patti, supra, is out of harmony with the majority view (a question we do not review herein, as we are concerned with making a correct interpretation of our statute, not with counting noses to see what others have done in construing variously worded statutes). Plaintiff further maintains that doubt is cast on Bunner by the case of Andrews v. Robinson Steel Construction Co., Mo., 355 S.W.2d 890. This latter case was one involving the Illinois Compensation Law, which provided that the general contractor should be liable for compensation to employees of subcontractors *unless* the subcontractor was insured. It did not involve a construction of the Missouri statute or a statute similar to the Missouri statute, and we do not consider that it affects the Bunner de-

cision. As a matter of fact, in the still later case of Thompson v. Kroeger, Mo., 380 S.W.2d 339, this court reviewed the Bunner case and specifically reaffirmed it.

Basically, the case at bar differs from the Bunner case only in that there is an intermediate subcontractor (Steurer) between the general contractor and the subcontractor employer of the injured plaintiff. Plaintiff states that it long has been the law in Missouri that an employee of one subcontractor may sue another subcontractor on the same job for negligence and that the defense permitted the general contractor under Bunner v. Patti, supra, is not available to the subcontractor. Cases cited are August Viermann Bricklaying Co. v. St. Louis Contracting Co., 335 Mo. 534, 73 S.W.2d 734, and State ex rel. W. J. Menefee Construction Co. v. Curtis, Mo. App., 321 S.W.2d 713. In the Viermann case the general contractor on the job was Dunham Construction Company. It made a subcontract with Viermann for the bricklaying work and a separate direct subcontract with St. Louis Contracting Company for stonework on the job. There was no contractual relationship between Viermann and St. Louis Contracting. An employee of Viermann was hurt and paid compensation. Then Viermann, based upon its subrogation rights, sued St. Louis Contracting as a third party for negligence. Understandably, the question of statutory employer was not raised. There was no conceivable basis for holding St. Louis Contracting to be liable to an employee of Viermann for compensation. In the Menefee case, the other case referred to above, the principal contractor was Koss Construction Company. It subcontracted certain work to Menefee. An employee of Koss was injured on the job. He then sued Menefee as a third party for negligence. This was held to be permissible, the court recognizing that Menefee was not a statutory employer of Chew, the injured employee of Koss. Menefee could have no liability for workmen's compensation to him. Thus both of these cases clearly are dis-

tinguishable and are not authority for the proposition that plaintiff has a right to sue Steurer.

The precise question with which we are confronted herein is this: In those instances where an owner is having improvements erected, demolished, altered or repaired by an independent contractor, do the provisions of § 287.040(3) and (4) make intermediate subcontractors which are between the general contractor and the subcontractor at the bottom of the chain occupy a status of statutory employer of the employees of their subcontractors? This question has not been decided in Missouri, and we address ourselves thereto.

§ 287.040(4) provides in part as follows: "In all cases mentioned in the preceding subsections, the immediate contractor or subcontractor shall be liable as an employer of the employees of his subcontractors. * * * The liability of the immediate employer shall be primary, and that of the others secondary in their order, and any compensation paid by those secondarily liable may be recovered from those primarily liable, with attorney's fees and expenses of the suit. * * * No such employer shall be liable as in this section provided, if the employee was insured by his immediate or any intermediate employer."

In the Bunner case, 343 Mo. 274, 121 S.W. 2d 153, l. c. 155, this court dealt with the term "immediate" as used in the above quoted section. In the first sentence quoted it was held to refer to the contractor or subcontractor "directly connected with the job or division thereof involved in the accident." The opinion states this necessarily refers to the remote employer rather than the direct employer of an injured employee because it states he shall be liable as an employer to employees of his subcontractors. This language contemplates a direct employer (subcontractor) nearer the employee. In the other instances the word "immediate" as used in said subparagraph was held to refer to the direct employer of the injured employee. It is clear that the statute makes the

immediate (direct) employer of the injured employee primarily liable for compensation, and makes the intermediate subcontractor or subcontractors and finally the principal contractor secondarily liable "in their order." In other words, this liability is on an ascending scale. Applied to the instant case, the primary liability to plaintiff was that of Stroup. If Stroup had not carried insurance, the next one responsible for compensation would have been Steurer, and finally Moeller. Clearly, therefore, a burden in the form of secondary responsibility for compensation is imposed by the statute on Steurer, the intermediate subcontractor, just as this court found the general contractor to have such an obligation in the Bunner case.

█ The next question is whether he also is granted under the statute the same immunity as employer from suits based on negligence which is accorded to the general contractor under the statute as interpreted in Bunner. Plaintiff contends that subparagraph (3) of § 287.040 makes only the general contractor a statutory employer of the employees of his subcontractors and that intermediate subcontractors are not accorded such status. We cannot agree. Subparagraph (3) reads in part as follows: " * * * but such an independent contractor shall be deemed to be the employer of the employees of his subcontractors and their subcontractors when employed on or about the premises where the principal contractor is doing work." Plaintiff would equate the term "independent contractor" to principal or general contractor, but it is significant that the section says that the "independent contractor" is deemed the employer of employees of subcontractors "when employed on or about the premises where the *principal* contractor is doing work." (Emphasis supplied.) This indicates that the "independent contractor" and the "principal contractor" are not necessarily one and the same. The "principal contractor" doing the work for the owner is an independent contractor, but an independent contractor need not be the "principal contractor." Each subcontrac-

tor in the chain actually would be an independent contractor. If we construe the term "independent contractor" as meaning each subcontractor in the chain, rather than principal contractor, as plaintiff would do, each such subcontractor then would be the statutory employer of the employees of any subcontractors under him. This would mean that the legislature gave the same immunity and treatment to all those on whom it imposed secondary liability for compensation. Such construction further recognizes that the legislature intended a difference when in subparagraph (3) it referred to "independent contractors" working on premises where the "principal contractor" was doing work. We must confess that the language of subparagraph (3) could have been more clearly stated, just as it would have been better in subparagraph (4) not to have used the term "immediate" with two necessarily different meanings. However, when the two subparagraphs (3) and (4) are read and construed together, and an attempt is made to give meaning and effect to all words therein, we think the proper interpretation is the one we have made. To hold otherwise necessarily means that the legislature intended to and did impose secondary liability for compensation on an ascending scale from the immediate employer of an injured employee up through other subcontractors in the direct line and finally to the general contractor, but that the corresponding immunity as employer was accorded only to the immediate employer at the bottom of the chain and to the general contractor at the top. Intermediate subcontractors, although responsible for compensation ahead of the general contractor, would be subject to suit for damages for negligence as stranger third parties, plus having a secondary compensation liability converted to primary liability where the injured employee was insured by his immediate employer. Furthermore, we would be holding that the legislature had imposed liability for compensation on ones who were not employers, contractual or statutory, with reference to the injured employee, whereas the whole theory of workmen's compensation is liability for

injury, regardless of fault, arising out of the *employment* relationship. We cannot so construe the statute. We hold that Steurer was a statutory employer of plaintiff.

■ Finally, says plaintiff, even if the statute makes an intermediate subcontractor a statutory employer, the defendant Steurer could not be excused in this case for the reason that Stroup carried compensation insurance, and consequently, under the last sentence of subparagraph (4) of § 287.040, Steurer had no liability for compensation to this plaintiff. The sentence in the statute relied on by plaintiff reads as follows: "No such employer shall be liable as in this section provided, if the employee was insured by his immediate or intermediate employer." Identically this same contention was raised in the Bunner case. There, as here, the immediate employer of the injured employee actually carried compensation insurance. In disposing of that contention, the court pointed out that although the sentence in question provided that a remote employer would not be liable if the injured employee was insured by his immediate or any intermediate employer, it *did not* say that he no longer would be *deemed* an employer, nor did it state that he would be considered as outside the protection of the act in that event. As the court in Bunner says, 121 S.W.2d l. c. 156, "There is no disclosure of any legislative intent to outcast a remote employer because he avails himself of a condition contained in the subsection, by requiring his subcontractors to carry liability insurance." Judge Ellison went on to point out further that a contrary result would penalize a contractor who complied with the intent and spirit of the act by requiring his subcontractor to provide workmen's compensation insurance. If the contractor did not require his subcontractor to carry compensation insurance, the contractor, under the act, would be liable for compensation to an injured employee of the subcontractor, but this would be the limit of his liability. As a statutory employer he would not be subject to an action for alleged negligence. § 287.120. Furthermore, his obligation for compensation would be a secondary liability and he could seek reimbursement therefor from his subcontractor. On the other hand, if the contractor required his subcontractors to carry insurance, the acceptance of plaintiff's contention that this eliminates any immunity as a statutory employer would subject him to the following: (1) He would absorb the compensation insurance premium which the subcontractor obviously would include in his price to the contractor; (2) the injured employee would recover compensation from the subcontractor's insurance carrier, which could then exact reimbursement from the remote contractor, thereby converting what was a secondary obligation for compensation on the remote employer to a primary obligation, and (3) the injured employee would have the right to recover common law damages for negligence from the remote employer. Such a construction, as pointed out in more detail in the Bunner case, does not accord with the object and purpose of the law, or with reason, and it is a construction which we reject. We reaffirm the views expressed in the Bunner case.

The judgment is affirmed.

All of the Judges concur.