Herbert H. HASE, Plaintiff,

v.

The AETNA CASUALTY AND SURETY COMPANY, Defendant.

No. 65 C 275(1).

United States District Court
E. D. Missouri, E. D.

Feb. 17, 1967.

Charles E. Gray, Gray & Sommers, St. Louis, Mo., for plaintiff.

M. E. Stokes, Associate Counsel, Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, Mo., for defendant.

HARPER, Chief Judge.

## MEMORANDUM OPINION

On December 19, 1963, in the Circuit Court of the City of St. Louis (Cause No. 50684–E) the plaintiff, Herbert H. Hase, obtained a judgment of $45,000.00 against the Wright City Display Manufacturing Company (hereinafter referred to as Display) for injuries he had received while working on a building project which was under the supervision of Display. Subsequently, said judgment remaining unsettled, the plaintiff, a citizen of Missouri, brought this action against the defendant, Aetna Casualty and Surety Company (hereinafter referred to as Aetna), a Connecticut corporation, to recover the sum of $45,000.-00, plus interest from December 19, 1963, under Aetna's comprehensive liability insurance policy No. 51 AL 5048.

The jurisdiction of this court exists and is based upon diversity of citizenship and amount.

The facts are before this court by way of oral testimony and numerous exhibits, including the files of the cases of Herbert H. Hase v. Missouri Edison Company (Cause No. 2092, Circuit Court of the County of St. Charles) and Herbert H. Hase v. Laclede Gateway Co., et al. (Cause No. 50684–E, Circuit Court of the City of St. Louis).

On September 21, 1946, the Wright City Manufacturing Company received a certificate of authority to do business in the State of Missouri. On October 2, 1959, the W C Display Manufacturing Company received its certificate of au-

thority to do business in the State of Missouri. W C Display Manufacturing Company purchased all of the assets of the Wright City Manufacturing Company, except its real estate. On October 9, 1959, W C Display Manufacturing Company and Wright City Manufacturing Company filed amendments to their certificates of incorporation whereby W C Display Manufacturing Company became Wright City Display Manufacturing Company (referred to above and hereinafter as Display) and Wright City Manufacturing Company became G & S Manufacturing Company.

Thereafter, the defendant Aetna issued through its agent, Paul Portnoy, its policy No. 51 AL 5048 (the policy in suit), said policy to be effective from July 7, 1960, to July 29, 1961. This policy was a "Comprehensive Liability Policy" covering various companies in which one Allen Portnoy had interests. One of these companies was designated in the policy as the Wright City Manufacturing Company, although extrinsic facts conclusively show that the policy was intended to insure Display (e. g., premiums were determined by an audit of Display's books) and not Wright City Manufacturing Company, which was non-existent under this name at the time the policy was issued.

On April 15, 1961, Display entered into a contract with the Laclede Gateway Company and the O'Fallon Investment Company (hereinafter referred to as Laclede and O'Fallon), whereby Display agreed, in part, as follows:

"It is agreed that Wright City Display Mfg. Company will supervise and erect a building * * * on the property * * * owned by O'Fallon Investment Company and Laclede Gateway Company * * *.

" * * * *

"Wright City Display Mfg. Company shall have complete charge of erecting the building according to plans and intends to use J. B. Riggle Construction Company as contractor for this purpose. All bills for construction materials and labor are to be presented to Wright City Display Mfg. Company for approval before payment by O'Fallon Investment Company & Laclede Gateway Company.

"Wright City Display Mfg. Company agrees to indemnify and hold harmless O'Fallon Investment Company & Laclede Gateway Company from and against the claims of anyone on account of the furnishing of labor and materials to the premises for erection of said building, and also agrees to indemnify and hold O'Fallon Investment Company & Laclede Gateway Company harmless from and against claims of any person who may be injured during the construction period and agrees to carry or require the contractor workmen's compensation, public liability and property damage insurance and also agrees to carry public liability insurance to protect O'Fallon Investment Company & Laclede Gateway Company."

Display also agreed to occupy the building as tenant upon its completion.

Pursuant to the above contract, Display hired the J. B. Riggle Construction Company (hereinafter referred to as Riggle) to furnish carpentry labor on the building. Although the contract refers to Riggle as the "contractor", the evidence shows that Display was the prime contractor and that Riggle was merely one of several sub-contractors along with the plumbing and heating contractor, the electrical contractor, the grading contractor, the concrete contractor, etc. Display's employees Shade and Early were frequently at the job site and were completely in charge of the erection of the building, arranging for the various subcontractors and the furnishing of material including the lumber. The subcontractors and materialmen submitted their bills to Display, and Shade and Early would approve these bills before forwarding them to Laclede and O'Fallon for payment. Riggle's bills principally consisted of breakdowns of the number of hours each of its employees worked and the amount due therefor. In Oc-

tober, 1961, the carpentry labor bill was submitted by Hase Construction Company (Hase Construction Company apparently taking over for Riggle towards the completion of the building).

The plaintiff Hase was the immediate employee of Riggle. On July 5, 1961, while working on the said building the plaintiff came into contact with an overhead high voltage line belonging to the Missouri Edison Company, and as a result he was seriously burned.

Following the accident the plaintiff received workmen's compensation benefits from Riggle's insurance carrier, the Standard Accident Insurance Company. Display also had a workmen's compensation policy with the defendant Aetna, but Hase did not seek payments under that policy. On October 21, 1961, in the Circuit Court of St. Charles County, the plaintiff filed a petition based on negligence against the Missouri Edison Company, being Cause No. 2092. The plaintiff dismissed this action without prejudice on March 4, 1963.

On October 30, 1962, in the Circuit Court of the City of St. Louis, the plaintiff filed a petition based upon alleged negligence against Laclede, O'Fallon and the Missouri Edison Company.

Thereafter, between November 8, 1962, and December 31, 1962, a disputation through a series of letters and meetings was carried on between representatives of Display and representatives of Aetna concerning Aetna's liability to defend Laclede and O'Fallon in the plaintiff Hase's action then pending in the Circuit Court of the City of St. Louis. Display took the position that Aetna should defend the action under its policy No. 51 AL 5048 since Display would be liable to O'Fallon and Laclede under the indemnification clause in the contract to erect the building. Further, Display asserted that the policy was meant to cover Display even though it named the Wright City Manufacturing Company as the named insured (among others). Aetna's position is best summed up by the following excerpt from a letter dated December 31, 1962, written by Mr. Scott of Aetna's claims department to Mr. Stone, Display's attorney:

"You wanted to know whether or not we would defend Wright City Display Company in the event they became defendants in the suit. We told you that they were not named as an insured under our policy and that, even if they had been so named, there was a violation of the provision of the policy which requires notice of accident as soon as practicable as a result of which we might have been prejudiced.

"We further told you that in view of the statements made concerning the Wright City Mfg. Co. and the Wright City Display Mfg. Co., we would be willing to make an investigation in order to give you a definite answer to your question, provided Wright City Display Mfg. Co. is willing to execute an agreement that all of our rights under the policy would be preserved and that our investigation would not constitute a waiver of any such rights."

Display refused to execute the requested non-waiver agreement even though a time limit of sixty days was to be placed thereon.

On March 5, 1963, Hase filed an amended petition in his suit then pending in the Circuit Court of the City of St. Louis, joining Display as a defendant. Thereafter Display again requested Aetna to defend the action and Aetna again refused.

On April 15, 1963, Display filed an answer to Hase's amended petition. Paragraph 4 of this answer contained an affirmative allegation that Display was not liable for Hase's injuries because Hase was a statutory employee of Display under Section 287.040, Revised Statutes of Missouri, and since Display was a major employer under the workmen's compensation laws of Missouri, Hase's sole remedy against Display was under workmen's compensation.

On December 19, 1963, Hase dismissed the action without prejudice against O'Fallon, Laclede and Missouri Edison Company, receiving $22,500.00 in settle-

ment from the Missouri Edison Company, $3,000.00 of which was subsequently paid to Riggle and its insurer, Standard Accident Insurance Company, for benefits they had paid to Hase. On the same day, Hase, pursuant to the provisions of 537.-065 of the Revised Statutes of Missouri, and for and in consideration of $1.00, entered into an agreement with Display whereby Display recognized that plaintiff had an unliquidated claim for damages against it, but in the event that judgment was obtained on said claim, the plaintiff agreed not to seek execution thereof against Display, but would hold the present defendant, Aetna, solely responsible therefor. Display's attorney thereupon withdrew Paragraph 4 of its answer (see above), and he then withdrew as Display's attorney, the case was called for trial, and Hase obtained a default judgment against Display in the amount of $45,000.00.

Since Hase had agreed to seek collection of the judgment solely from Aetna, he brought the present action on August 5, 1965.

The primary issue in this case is whether the plaintiff's accident came within the policy coverage of the defendant Aetna's policy No. 51 AL 5048 issued to Display. In resolving the issue the parties are in agreement that Missouri law controls.

Initially Aetna refused to defend Display on any action under policy No. 51 AL 5048, taking the position that Display was not a named insured and that Display had failed to comply with the reasonable notice provision of the policy. Aetna concedes in its brief that on the basis of information now known it could have determined that Display and the Wright City Manufacturing Company were the same, and Display was the company which was meant to be and was insured under policy No. 51 AL 5048.

In its amended answer to the complaint Aetna set forth six specific defenses. However, Aetna's brief clearly shows that it now raises only the following defenses:

1) That Display is not covered under the policy No. 51 AL 5048 because it

refused to sign a non-waiver agreement which, under the unusual circumstances of this case, constituted a failure to cooperate as was required by the policy;

2) That Display is not covered under the said policy because it failed to give Aetna prompt notice of Hase's accident as was required by the policy; and

3) That Hase was a statutory employee of Display, and, therefore, his exclusive remedy against Display for his injuries would have been under workmen's compensation.

As to the defendant's first contention, the general rule is that the refusal to sign a non-waiver agreement does not constitute a failure to cooperate. See 8 Appleman, Insurance Law and Practice, sec. 4776, and cases cited in footnote 47.5. Having failed to find a Missouri case on the point the court assumes that this general principle is also the law in Missouri. The defendant, without citing any authority, would have this court carve out an exception to the general rule because of what it terms the "unusual" circumstances of this case. The defendant further suggests that had it investigated and defended the action without first obtaining a non-waiver agreement it would have waived all of its defenses against the policy based upon late notice.

The present circumstances are not so unusual as to warrant an exception to the general rule set out above. The "unusual" circumstances upon which the defendant relies here are simply that policy coverage was extremely doubtful. Such circumstances are obviously very often present when a non-waiver agreement is requested, and, in fact, supply the very reason for such a request.

Furthermore, while it may be true that the defendant would have waived its policy defenses had it defended the action without first obtaining a non-waiver agreement from the insured, Schmidt v. National Auto & Casualty Ins. Co., 207 F.2d 301, 38 A.L.R.2d 1142 (C.A. 8), there is no authority that it would have been necessary for Aetna to obtain a non-waiver agreement from the

insured before investigating its policy liability, Traveler's Indemnity Co. v. Harris, 216 F.Supp. 420 (D.C.Mo.). In affirming this decision the appellate court held that in fact, the insurer must be given a reasonable time to investigate, Cannon v. Traveler's Indemnity Co., 314 F.2d 657 (C.A. 8). Aetna certainly had a reasonable time to investigate here even though the non-waiver agreement was not signed.

As the defendant's second contention, the law in Missouri is clearly set forth in Western Casualty and Surety Co. v. Coleman, 186 F.2d 40, 44 (C.A. 8), to-wit:

"The Missouri cases cited have established the rule that failure of an insured to give notice of an accident will not defeat his rights under a liability policy unless it contains a provision for the forfeiture in that event or unless the insurer proves that the failure resulted in prejudice to it."

See also Schultz v. Queen Insurance Co., 399 S.W.2d 230 (Mo.App.). Such prejudice may not be proved by a presumption. Powell v. Home Indemnity Co., 343 F.2d 856 (C.A. 8).

In the present case the policy does not contain a forfeiture clause for failure to give prompt notice, and the defendant has not proven that Display's delay in giving notice of Hase's accident has in any way prejudiced it.

As to its third defense, Aetna more particularly contends that Display was a statutory employer of Hase under subsections 1 and 3 of section 287.040 of the Revised Statutes of Missouri, and that, therefore, coverage of Display in the present situation is excluded under the following provisions of policy No. 51 AL 5048:

"This policy does not apply:

" * * *

"(d) Under Coverage A and C, to any obligation for which the Insured of any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law.

" * * *

"(f) Under Coverage C, except with respect to liability assumed by the Insured under a contract as defined herein, to bodily injury to or sickness, disease or death of any employee of the Insured arising out of and in the course of his employment by the Insured."

Coverage C refers to "Bodily Injury— Except Automobile."

In response to Aetna's third defense the plaintiff contends:

1) That defendant did not deny liability under its policy because of exclusionary provisions contained therein until it filed an amended answer, and since the defendant did not deny coverage on this ground, it has now been waived;

2) That at the time of the injury plaintiff was not a statutory employee of Display; and

3) That defendant is estopped from collaterally attacking the judgment that Hase obtained against Display in the Circuit Court of the City of St. Louis.

The plaintiff's first contention is completely answered by the following language in Blew v. Conner, Mo.App., 310 S.W.2d 294, 303:

"While waiver and estoppel may prevent an insurer from asserting a *defense* to coverage otherwise provided by an insurance policy our Missouri appellate courts so far as we have been able to ascertain have not yet permitted the use of either waiver or estoppel to establish coverage in the first instance where none existed before."

The court turns now to the plaintiff's second contention. Was Hase a statutory employee of Display within the meaning of 287.040, Revised Statutes of Missouri, V.A.M.S., and if so, would this fact exclude policy coverage? There is no question but that Display is a major employer within the meaning of Missouri workmen's compensation laws.

Policy No. 51 AL 5048 clearly excludes coverage of an employee of Display (see excerpt above). If Hase was a statutory

employee of Display under 287.040, R.S. Mo., he was also an employee of Display within the meaning of the policy exclusion. See Ward v. Curry, Mo., 341 S.W. 2d 830. Thus, to answer this question we are left solely with the determination of whether Hase was a statutory employee of Display.

The relevant parts of 287.040, R.S.Mo., are as follows:

"1. Any person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business.

"3. The provision of this section shall not apply to the owner of premises upon which improvements are being erected, demolished, altered or repaired by an independent contractor but such independent contractor shall be deemed to be the employer of the employees of his subcontractors and their subcontractors when employed on or about the premises where the principal contractor is doing work."

In the present situation Display contracted with Laclede and O'Fallon to erect a building on Laclede's and O'Fallon's premises. Display was to have complete control over the design and construction of the building and upon its completion was to occupy such building as tenant. As noted in the facts set out above, Display hired Riggle ostensibly to be the "contractor" on the building, and further Riggle was sometimes referred to as the "general contractor". However, the evidence undisputedly shows that Display was the general contractor. Its employees, Shade and Early, made all of the arrangements for the erection of the building, including the hiring of the subcontractors, of which Riggle was one of several, and the furnishing of the construction materials. All that Riggle did,

and the only thing for which it billed Display, was carpentry labor. Such circumstances not only indicate that Display was the general contractor, but also indicate that it was an independent contractor. Davis v. Moller, 75 S.W.2d 610 (Mo.App.)

It has been held in Missouri on various occasions that a general contractor is a statutory employer of subcontractors' employees so as to render it immune from a suit by a subcontractor's employee for negligence. Anderson v. Steurer, Mo., 391 S.W.2d 839. Further, 287.040(3) appears to make an independent contractor the employer of his subcontractor's employees for workmen's compensation purposes.

But the plaintiff contends that 287.040(3), R.S.Mo., does not extend coverage and make an individual a statutory employee of the independent contractor unless all of the requirements of 287.040(1) are met, in particular the requirement that the work to be performed under the contract is an operation of the owner's usual business which he there performs. (Even though Display was not the owner of the premises upon which the building was being erected, plaintiff would extend this provision to independent contractors and general contractors.) This court cannot agree with the contention. The cases cited by the plaintiff, e. g. Gholson v. Scott, 130 S. W.2d 216 (Mo.App.), did not treat with 287.040(3), R.S.Mo., which clearly provides that an independent contractor is a statutory employer of the employees of his subcontractors. In fact, in Gholson v. Scott, supra, upon which the plaintiff places substantial reliance, the party sought to be charged as a statutory employer was held not to be an independent contractor. Having found that Display was an independent contractor, 287. 040(3), R.S.Mo., directs this court to find that Display was a statutory employer of Hase. Further, as the general contractor, Display was the statutory employer of its subcontractors' employees. Anderson v. Steurer, supra.

In the final analysis, the plaintiff's whole argument on this point is premised upon the court's finding that the construction work at the job site was not Display's usual line of business on those premises. Such a finding would be erroneous. Display's only business at the construction site at the time of the plaintiff's accident was the construction of the building, and could be its only business until the building was completed.

The court turns now to the plaintiff's final contention, that is, that the judgment against Display in the Circuit Court of the City of St. Louis is res adjudicata and Aetna is estopped to collaterally attack such judgment. The contention has merit.

Generally, under either res adjudicata or collateral estoppel the parties in the subsequent action must have been either parties to, or in privy with parties to, the prior action. Lawlor v. National Screen Service Corp., 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122. In the present situation Aetna was neither a party to nor in privy with a party to the action in the Circuit Court of the City of St. Louis. Nevertheless, Aetna may be bound by such action because of its contractual relationship to Display. Since Aetna was given notice and a reasonable opportunity to defend the action in the Circuit Court of the City of St. Louis, Display may be said to have *vouched in* Aetna. Moore's Federal Practice, Vol. 1–B, § 0.405(9), page 774, states:

"Likewise, under the modern concept of vouching in, a vouchee who refuses to defend is concluded by the judgment against the voucher as to all issues that were adjudged, including the nature of the plaintiff's claim; and the vouchee's defenses in an action over by the defendant, or in a suit on the unsatisfied judgment by the plaintiff, are limited to denial of notice and opportunity to defend, of the alleged warranty or obligation to reimburse the voucher, and that the claim against the voucher is within the coverage of the vouchee's obligation. *As to coverage, if the judgment against the voucher adjudicates the nature of the claim against him, as usually it will, the judgment is normally conclusive as to the nature of the claim for the purpose of determining whether it is within the coverage of the vouchee's obligation.*" (Emphasis added.)

See also, B. Roth Tool Co. v. New Amsterdam Casualty Co., 161 F. 709 (C. A. 8), and Row v. Cape Girardeau Foundry Co., 141 S.W.2d 113 (Mo.App.)

Under policy No. 51 AL 5048 Aetna agreed to indemnify Display for any common law liability. The judgment in the Circuit Court of the City of St. Louis held that Display was liable to Hase at common law. Aetna is bound by that judgment as determining the nature of Hase's claim against Display and hence the policy coverage. Aetna cannot now contend, for purposes of policy coverage, that the nature of Hase's claim against Display was not at common law but was within the workmen's compensation laws.

In support of its position Aetna cites Northwest Electric Power Cooperative, Inc. v. American Motorists Ins. Co., 346 S.W.2d 701 (Mo.App.), Perkins v. Becker, 236 Mo.App. 786, 157 S.W.2d 550, Daniel v. State Farm Mutual Ins. Co., 233 Mo.App. 1081, 130 S.W.2d 244, and Farm Bureau Mutual Automobile Ins. Co. v. Hammer, 177 F.2d 793 (CA 4). These cases generally deal with the situation where there is a conflict of interest between the insured and the insurer obligated to defendant. The problem is aptly discussed in Moore's Federal Practice, Vol. 1–B, § 0.405(9), note 9, in part, towit:

"Vouchee-insurers are sometimes placed in an extremely difficult position by notice from the insured and a request to defend a suit against the insured brought on allegations of negligence when the insurer wishes to defend on the ground that the claim is not within the coverage of the policy because the injury to the claimant was intentional or willful and wanton. Whether the insurer defends or not, a judgment against the insured based on allegations of negligence precludes this

defense by the insurer. And the insurer, if it elects to defend, waives such defenses, that are personal to it. * * * The difficulty of the insurer's position is aggravated if it is obligated, by the terms of the policy, to defend the suit against the insured. This situation was presented in Farm Bureau Mut. Automobile Ins. Co. v. Hammer, supra."

No such situation exists here since Aetna's policy defense and Display's defense to Hase's action were the same.

For the foregoing reasons Aetna is bound by Hase v. Laclede Gateway Co., et al. (Cause No. 50684–E, Circuit Court of the City of St. Louis) as determining the coverage of policy No. 51 AL 5048, and the plaintiff is entitled to judgment for $45,000.00.

This memorandum opinion is adopted by the court as its findings of fact and conclusions of law, and the clerk is directed to enter judgment in favor of the plaintiff for $45,000.00, plus interest from December 19, 1963.