PATRICIA BRECKENRIDGE, Judge.
 

 Mark Augur appeals the trial court’s grant of summary judgment in favor of Norfolk Southern Railroad Company on his claim for negligence. Mr. Augur’s
 
 *498
 
 claim arose from injuries he sustained while descending a ladder on a railcar owned by Norfolk. At the time of Mr. Augur’s injuries, he was employed by Freight Consolidation Services, Inc. (FCS). On appeal, Mr. Augur claims that the trial court erred in finding that Norfolk relinquished possession of the job-site and control over FCS employees to FCS and, therefore, in granting summary judgment in favor of Norfolk. Mr. Augur also argues that the trial court erred in finding, as a matter of law, that Norfolk did not have a duty to FCS employees as the supplier of a defective instrumentality. Finally, Mr. Augur contends that the trial court erred in finding that Norfolk did not have actual or constructive knowledge of the condition alleged to have caused Mr. Augur’s injuries. Because the trial court lacked jurisdiction over Mr. Augur’s claim, the judgment is reversed and the case is remanded with instructions to dismiss Mr. Augur’s petition.
 

 Factual and Procedural Background
 

 Norfolk Southern Railroad Company owns and operates an inbound automotive distribution facility in Kansas City, known as the Voltz ramp.
 
 [1]
 
 Norfolk contracted with FCS to load and unload vehicles shipped by rail to the Voltz ramp and place the vehicles in a storage area. Before FCS employees unload the railcars, Norfolk employees transport the railcars to the Voltz ramp and brake the railcars at appropriate intervals. Norfolk employees perform this task in the morning before FCS employees arrive. FCS employees load and unload vehicles from Norfolk rail-cars on a daily basis, five days a week, eight hours a day. The contract between FCS and Norfolk designated FCS as an independent contractor and provides that it is solely responsible for supervising its employees. The contract also requires FCS to pay all expenses and charges involved or incurred in the performance of its obligations under the contract, including the payment of workers’ compensation insurance.
 

 Mr. Augur is an employee of FCS. On October 17, 1994, while Mr. Augur was unloading vehicles at the Voltz ramp, he was climbing down a ladder when his foot got tangled in a lantern that was inappropriately hung from the ladder. Consequently, Mr. Augur lost his balance and fell. Mr. Augur sustained injuries to his left shoulder and lumbar spine. On or about August 24, 1995, Mr. Augur filed a workers’ compensation claim for his injuries. Liberty Mutual Insurance Company, FCS’s insurance carrier, provided coverage for Mr. Augur’s injuries.
 

 On October 15, 1999, Mr. Augur filed a “Petition for Damages” against Norfolk. The petition alleged that Norfolk was negligent in (1) placing the lantern on the ladder; (2) failing to inspect the ladder; (3) failing to remove the lantern from the ladder; and (4) failing to warn Mr. Augur of the presence of the lantern. Thereafter, Norfolk filed a motion for summary judgment,- or in the alternative, motion to dismiss. In its motion, Norfolk claimed that because Mr. Augur’s immediate employer, FCS, carried workers’ compensation insurance that covered Mr. Augur’s injuries, under section 287.040.4, RSMo 2000,
 
 [2]
 
 Mr. Augur could not bring suit against a remote employer for the same injuries. Alternatively, Norfolk argued that the court lacked subject matter jurisdiction over Mr. Augur’s claim because the
 
 *499
 
 workers’ compensation act provides the exclusive remedy for Mr. Augur’s injuries. Specifically, Norfolk alleged that under section 287.040.1, it was a statutory employer of Mr. Augur and, therefore, jurisdiction over Mr. Augur’s claim rests solely with the Labor and Industrial Relations Commission.
 

 In response to Norfolk’s motion for summary judgment, Mr. Augur argued that the protection from liability afforded remote employers by the workers’ compensation act is inapplicable in this case because Norfolk does not operate subject to Missouri workers’ compensation law based on federal preemption. In particular, Mr. Augur claimed that Missouri workers’ compensation claims for injuries to railroad employees are preempted by the Federal Employers’ Liability Act (FELA), 45 U.S.C. sections 51 et seq. In addition, Mr. Augur maintained that Norfolk is not the statutory employer of Mr. Augur because Norfolk failed to prove that loading and unloading vehicles from railcars was part of its “usual business.” The trial court denied Norfolk’s motion for summary judgment without comment.
 

 Norfolk then filed a second motion for summary judgment, or in the alternative, motion to dismiss. Norfolk argued that Mr. Augur, as an employee of an independent contractor covered by workers’ compensation insurance, has no cause of action against Norfolk, as the owner of the premises, because Norfolk neither substantially controlled the details of Mr. Augur’s activities nor controlled the premises on which he was performing his work. Norfolk also claimed that Mr. Augur failed to state a claim because he was unable to establish that Norfolk had actual or constructive notice of the alleged defective condition, that is, a lantern hanging from a railcar ladder.
 

 Thereafter, Mr. Augur filed a “First Amended Petition for Damages” allegedly covering all of the elements of a claim against Norfolk based on Norfolk’s duty as the owner and occupier of land, or alternatively, on Norfolk’s status as the supplier of a dangerous instrumentality. Ten days later, Mr. Augur filed his response to Norfolk’s second motion for summary judgment. In his response, Mr. Augur claimed that a gemiine dispute existed regarding whether Norfolk retained possession and control of the Voltz ramp and whether Norfolk retained the right to control the physical activities of FCS employees. Mr. Augur also argued that Norfolk had a duty to him, not only as a landowner, but also as a supplier of an instrumentality, i.e., the railcar. Specifically, Mr. Augur claimed that Norfolk was required to exercise ordinary care to determine whether the instrumentality was safe and, if the instrumentality was not safe, to repair or warn of the danger. Finally, Mr. Augur argued that circumstantial evidence established that the lantern was likely on the railcar when Norfolk braked the railcar at the Voltz ramp, which was before Mr. Augur was injured.
 

 On August 5, 2003, the trial court granted Norfolk’s second motion for summary judgment, finding no genuine issue as to any material fact. In particular, the trial court found that Norfolk did not have substantial control over Mr. Augur’s physical activities or the details of his work; Norfolk had relinquished to FCS possession and control of that portion of the premises necessary for Mr. Augur to perform his duties; and Norfolk did not have actual or constructive knowledge of the condition alleged to have caused Mr. Augur’s injuries. Mr. Augur filed this appeal.
 

 Points On Appeal
 

 Mr. Augur raises three claims of error on appeal. In his first point, Mr. Augur argues that the trial court erred in granting summary judgment in favor of Norfolk
 
 *500
 
 because a genuine issue of fact exists as to whether Norfolk relinquished to FCS possession and control of the Voltz ramp. In his second point, Mr. Augur claims that even if Norfolk did not retain substantial control over FCS employees, the trial court, nevertheless, erred in granting summary judgment in favor of Norfolk because Norfolk owed a duty to FCS employees as the supplier of a defective instrumentality, that being a railcar with a lantern on its ladder. Finally, Mr. Augur contends that the trial court erred in granting summary judgment in favor of Norfolk because it failed to view the evidence in the light most favorable to Mr. Augur in determining that Norfolk did not have actual or constructive knowledge of the condition that caused Mr. Augur’s injuries. While Norfolk disagrees with each of Mr. Augur’s points on appeal, Norfolk alternatively asks this court to affirm the trial court’s judgment on the basis that the trial court lacked subject matter jurisdiction over Mr. Augur’s common law claim. Before reaching the merits of Mr. Augur’s claims, because this court is compelled to determine its jurisdiction, this issue will be addressed first.
 
 Stotts v. Progressive Classic Ins. Co.,
 
 118 S.W.3d 655, 660 (Mo.App.2003).
 

 Trial Court Lacked Jurisdiction Over Mr. Augur’s Claim
 

 This court’s jurisdiction to review the merits of Mr. Augur’s claim “is predicated on the trial court’s having jurisdiction to enter the judgment appealed.”
 
 Brock v. Blackwood,
 
 143 S.W.3d 47, 55 (Mo.App.2004). “[I]f the trial court lacked jurisdiction over this action, then any judgment entered thereon would be void, depriving [this court] of jurisdiction except to reverse the judgment and remand the cause for dismissal by the trial court.”
 
 Gov’t e-Management Solutions, Inc. v. Am. Arbitration Ass’n,
 
 142 S.W.3d 857, 860 (Mo.App.2004). Missouri workers’ compensation law provides for the exclusive remedy for injured workers. Section 287.120. If “it appears, by a preponderance of the evidence, that the trial court lacks subject matter jurisdiction because of workers’ compensation exclusivity,” then the motion to dismiss should be granted.
 
 Murry v. Mercantile Bank,
 
 34 S.W.3d 193, 195 (Mo.App.2000). Norfolk, as the party raising the defense of exclusivity, must demonstrate, by a preponderance of the evidence, that the trial court lacked subject matter jurisdiction.
 
 Id.
 

 Norfolk asserts that the trial court lacked subject matter jurisdiction over Mr. Augur’s claim because Mr. Augur is a statutory employee as defined under section 287.040.1. Therefore, Norfolk claims that Mr. Augur’s injuries lie exclusively in workers’ compensation and jurisdiction over Mr. Augur’s claim rests solely with the Labor and Industrial Relations Commission.
 

 In reply, Mr. Augur claims that, because Norfolk is a railroad company and FELA preempts claims brought by employees of railroad companies, Norfolk does not operate subject to Missouri workers’ compensation law. In particular, Mr. Augur points to section 287.120 of the Missouri workers’ compensation act to support his position. In relevant part, section 287.120.1 provides:
 

 Every employer
 
 subject to the provisions of this chapter
 
 shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident arising out of and in the course of his employment, and shall be released from all other liability therefor whatsoever, whether to the employee or any other person.
 

 (Emphasis added). Mr. Augur claims that because claims brought by employees of railroad companies are preempted by FELA, Norfolk is not an employer “sub
 
 *501
 
 ject to the provisions of’ the workers’ compensation law. Therefore, Mr. Augur argues, Norfolk is not entitled to immunity-under section 287.120 from common law claims.
 

 An “employer” for purposes of Missouri workers’ compensation law is defined by section 287.030.1(1) as “[ejvery person, partnership, association, corporation, ... and every other person, including any person or
 
 corporation operating a railroad
 
 ..., using the service of another for pay[.J” (Emphasis added). Thus, Mr. Augur incorrectly asserts that a railroad company cannot be an “employer” subject to the provisions of the Missouri workers’ compensation act merely because a federal statute may preempt certain claims brought against a railroad company. By expressly listing a railroad company as an “employer” under the workers’ compensation act, the legislature clearly expressed its intent that railroad companies may be subject to the provisions of the act. Section 287.030.1(1). To determine whether a particular railroad company is subject to the act, the scope of Missouri’s workers’ compensation law must be examined. The scope of the act is set forth in section 287.110.1. In particular, subsection 1 provides that the act applies “to all cases within its provisions except those exclusively covered by any federal law.” Section 287.110.1. Thus, any claim against an employer that is exclusively covered by federal law, such as a FELA claim, must be brought under the appropriate federal law. All other claims within the act’s provisions that are not specifically preempted by federal law, however, which could in-elude a claim against a railroad company not preempted by FELA, would fall under the exclusive jurisdiction of the Labor and Industrial Relations Commission.
 
 See, e.g., Montgomery v. Terminal R.R. Ass’n of St. Louis,
 
 335 Mo. 348, 73 S.W.2d 236 (1934) (exclusive remedy for injured railroad employee who was not engaged in interstate commerce at time of injury and, therefore, not covered under FELA, is under workers’ compensation act).
 

 In this case, if federal law preempts Mr. Augur’s claim against Norfolk, then Mr. Augur would have been required to bring his claim under the appropriate federal law, that is FELA. Mr. Augur did not bring a FELA claim.
 
 [3]
 
 On the other hand, if federal law does not preempt his claim, because it is possible for a railroad company to be an “employer” subject to the provisions of the Missouri workers’ compensation act, it must be determined whether, in this case, Norfolk is subject to the provisions of the act. If Norfolk is subject to the provisions of the workers’ compensation act, then Norfolk would be immune from the common law action filed by Mr. Augur and compensation for his injuries would lie exclusively in workers’ compensation and jurisdiction over Mr. Augur’s claim would lie exclusively with the Labor and Industrial Relations Commission. Norfolk argues that it is subject to the provisions of the Missouri workers’ compensation act because Mr. Augur is a statutory employee of Norfolk under section 287.040.1.
 

 Under section 287.040.1,
 
 [4]
 
 statutory employment exists when “(1) the work is performed pursuant to a contract; (2)
 
 *502
 
 the injury occurs on or about the premises of the alleged statutory employer; and (3) the work is in the usual course of business of the alleged statutory employer.”
 
 Bass v. Nat’l Super Markets, Inc.,
 
 911 S.W.2d 617, 619-20 (Mo. banc 1995). “Where the facts are not in dispute as to the nature of the agreement and the work required by it, the existence or absence of statutory employment is a question of law for the courts to decide.”
 
 Id.
 
 at 621.
 

 The first element for statutory employment requires that the work be performed pursuant to a contract. The undisputed facts in this case are that Norfolk contracted with FCS for the loading and unloading of vehicles shipped by rail to Norfolk’s Voltz ramp. Therefore, the first element is met. The second element for statutory employment requires that Mr. Augur’s injuries occurred on or about the premises of the alleged statutory employer. Here, Mr. Augur’s injuries occurred while performing the contracted services at the Voltz ramp, property owned and operated by Norfolk. Therefore, the second element is satisfied.
 

 The third- element for statutory employment requires that the work performed by FCS employees be within the usual course of Norfolk’s business. “Usual business,” as used in section 287.040.1, is defined as activities “(1) that are routinely done (2) on a regular and frequent schedule (3) contemplated in the agreement between the independent contractor and the statutory employer to be repeated over a relatively short span of time (4) the performance of which would require the statutory employer to hire permanent employees absent the agreement.”
 
 Bass,
 
 911 S.W.2d at 621.
 

 In this case, the work performed under the contract between FCS and Norfolk was routine, scheduled, and repetitive.
 
 State ex rel. MSX Int'l, Inc. v. Dolan,
 
 38 S.W.3d 427, 430 (Mo. banc 2001). FCS employees were responsible for loading and unloading vehicles from railcars at the Voltz ramp, and moving vehicles to Norfolk’s storage facility, five days a week, eight hours a day. The agreement was entered into on June 20, 1994, and remained effective through the date Mr. Augur was injured.
 
 [5]
 
 In addition, had Norfolk not contracted with FCS, it would have been necessary for Norfolk to hire its own employees to load and unload vehicles from its railcars.
 

 Mr. Augur argues, however, that the undisputed facts do not prove that the work performed under the contract was part of the “usual business” of Norfolk. Mr. Augur relies on
 
 Parker v. National Super Markets, Inc.,
 
 914 S.W.2d 30 (Mo.App.1995). In that case, the plaintiff was a route deliveryman employed by Marion Pepsi to deliver Pepsi products to customers in Marion Pepsi’s service area, including one of the defendant’s stores.
 
 Id.
 
 at 31. When making a delivery to the defendant’s store, the plaintiff was injured on the defendant’s loading dock.
 
 Id.
 
 The plaintiff filed suit and received a judgment of $10,400.
 
 Id.
 
 On appeal, the defendant argued that the plaintiff was a statutory employee of the defendant and, therefore, the court lacked jurisdiction because the injury was covered by workers’ compensation.
 
 Id.
 
 In affirming the judgment in favor of the plaintiff, the court found that the plaintiffs delivery of Pepsi products to defendant’s store was not in the usual course of the defendant’s business.
 
 Id.
 
 at 31-32. In so finding, the court stated that there was “no evidence that vendors would have allowed defendant’s employees to make such deliveries, there was no evidence that defendant’s employees had ever made such deliveries, and there was evidence that no deliveries of Pepsi product had ever been made by defendant’s em
 
 *503
 
 ployees.”
 
 Id.
 
 Mr. Augur contends that because Norfolk did not present any evidence that any of its employees had ever unloaded vehicles from railcars, under
 
 Parker,
 
 Norfolk failed to prove that the work performed under the contract was part of the “usual business” of Norfolk.
 

 In
 
 Parker,
 
 however, the court specifically found that the “very nature of the agreement between Marion Pepsi and defendant was that Marion Pepsi supplied its product to the store, unloaded its product and shelved it using its employees.”
 
 Id.
 
 at 32. Thus, under the terms of the agreement between Marion Pepsi and the defendant, the defendant’s employees could never have performed the work performed by the plaintiff in
 
 Parker.
 
 In other words, the plaintiffs employer did not allow its product to be delivered or shelved by anyone other than its own employees. That is not the case here. The contract between Norfolk and FCS does not provide that Norfolk employees cannot unload vehicles from its railcars. Thus,
 
 Parker
 
 is distinguishable.
 

 This court finds the facts of this case more akin to the facts in
 
 Dolan.
 
 38 S.W.3d 427. In
 
 Dolan,
 
 MSX International contracted with Chrysler Corporation to produce sequenced wheel assemblies.
 
 Id.
 
 at 429. MSX then subcontracted with Logistics Management Services, Inc. (LMS) to supply employees for the manufacturing of the sequenced wheel assemblies.
 
 Id.
 
 The plaintiff, employed by LMS, sustained injuries while working as a wheel assembler.
 
 Id.
 
 Following his injuries, the plaintiff filed a workers’ compensation claim against LMS and a common law claim for damages against MSX.
 
 Id.
 
 The Supreme Court, however, found that MSX was a statutory employer of the plaintiff and, therefore, the trial court lacked subject matter jurisdiction over the plaintiffs common law claim.
 
 Id.
 
 at 430. In particular, the court found that the work performed by the plaintiff “was routine, scheduled, repetitive, and would have required MSX to hire its own employees but for having contracted with LMS.”
 
 Id.
 

 Here, Norfolk contracted with auto companies regarding delivery of vehicles by rail. Norfolk, in turn, subcontracted FCS to load and unload the vehicles from its railcars and to move the vehicles to Norfolk’s storage area. Mr. Augur, an employee of FCS, was injured in the course of unloading vehicles from Norfolk’s rail-cars. The work performed by Mr. Augur was routine, scheduled, repetitive, and would have required Norfolk to hire its own employees but for having contracted with FCS.
 
 Id.
 
 Thus, the work performed by Mr. Augur was in the usual course of Norfolk’s business. Consequently, Norfolk was a statutory employer and, therefore, if federal law did not preempt Mr. Augur’s claim as discussed above, then Norfolk would be subject to the provisions of the Missouri workers’ compensation act as a statutory employer. Therefore, in the absence of federal preemption, because Norfolk is a statutory employer under section 287.040.1, it “was immune from the common law action filed by [Mr. Augur] by virtue of the worker’s compensation statute.”
 
 Id.
 
 at 430. In other words, either Mr. Augur’s claim should have been brought as a FELA claim, or, if Mr. Augur’s claim were not preempted by FELA, then jurisdiction over Mr. Augur’s claim would rest solely with the Labor and Industrial Relations Commission because Norfolk is a statutory employer under section 287.040.1. In either case, Norfolk has demonstrated, by a preponderance of the evidence, that the trial court lacked subject matter jurisdiction over Mr. Augur’s claim.
 
 [6]
 

 
 *504
 
 Having determined that the trial court lacked jurisdiction over Mr. Augur’s claim, the judgment is reversed and the case is remanded with instructions to dismiss Mr. Augur’s petition.
 

 All concur.
 

 [1]
 

 . The Voltz ramp is a twenty-five acre location, which is completely enclosed by a fence. The facilüy has three locked gates, which are manned by guards twenty-four hours a day.
 

 [2]
 

 . All statutory references are to the Revised Statutes of Missouri 2000.
 

 [3]
 

 . Resolution of this case, however, does not require this court to decide whether FELA preempts Mr. Augur’s claim.
 

 [4]
 

 . Specifically, section 287.040.1 provides:
 

 Any person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business.
 

 [5]
 

 . The original agreement between Norfolk and FCS was entered into in 1973.
 

 [6]
 

 . Norfolk also claims that, under section 287.040.4, because Mr. Augur's immediate
 
 *504
 
 employer, FCS, carried workers’ compensation insurance, which covered Mr. Augur’s injuries, Mr. Augur cannot bring suit against Norfolk, a remote employer, for the same injuries. Section 287.040.4 provides in relevant part, "[n]o such employer shall be liable as in [section 287.040] provided, if the employee was insured by his immediate or any intermediate employer.” Thus, "section 287.040.4 deals with the determination of who pays under the worker’s compensation act.”
 
 Dolan,
 
 38 S.W.3d at 430. Specifically, section 287.040.4 "serves to prioritize the obligations of contractors and subcontractors by determining the order of liabilities when more than one party is potentially liable for payment of workers’ compensation benefits.”
 
 Chouteau v. Netco Constr. Co.,
 
 132 S.W.3d 328, 335 (Mo.App.2004). In this case, Mr. Augur’s immediate employer, FCS, was insured for Mr. Augur’s injuries, and Mr. Augur has already received workers’ compensation benefits under FCS’s insurance policy. Mr. Augur, nevertheless, argues that even if Norfolk operates subject to the workers’ compensation act, Norfolk should not be able to claim the benefits of section 287.040.4 because the statute's purpose is to prevent employers from circumventing the requirements of the act by hiring independent contractors to perform work the employer would otherwise perform. By the terms of its contract with FCS, however, Norfolk required FCS to carry its own workers’ compensation insurance. In doing so, Norfolk availed itself of section 287.040.4, and has not circumvented the requirements of the act.
 
 Id.
 
 at 336. Rather, in its contract with FCS, Norfolk sought to ensure that all of FCS's employees were covered by workers’ compensation insurance. The cost of this provision was paid by Norfolk in terms of the contracted price between FCS and Norfolk. Thus, Norfolk is not liable to Mr. Augur in workers' compensation as a remote employer under section 287.040.4 because Mr. Augur’s immediate employer already compensated Mr. Augur for his injuries.