**Robert L. SHAW, Appellant,**

v.

**MEGA INDUSTRIES, CORP., Respondents.**

No. WD 75501.

Missouri Court of Appeals, Western District.

July 30, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 27, 2013.

Jason M. Pottenger, Kansas City, MO, for appellant.

William C. Crawford and Luke R. Hertenstein, Kansas City, MO, for respondent.

Before Division Four: JAMES E. WELSH, C.J., ALOK AHUJA, J., and JACK R. GRATE, Sp. J.

ALOK AHUJA, Judge.

Appellant Robert Shaw was injured while working on a construction project known as Zona Rosa Development II in Kansas City ("the Project"). Shaw was an employee of RLS Trucking; RLS was a subcontractor for Respondent Mega Industries Corp. After Shaw settled a workers' compensation claim for his injuries with RLS, he sued Mega Industries in the Circuit Court of Platte County. The cir-

cuit court entered summary judgment in favor of Mega Industries. It found that Mega Industries was Shaw's statutory employer, and that his common-law claims against Mega Industries were therefore barred by the exclusive-remedy provisions of the Workers' Compensation Law. Shaw appeals. We affirm.

### Factual Background

At the time of his injuries, Shaw was employed by RLS, which is in the business of excavating and hauling materials such as gravel, dirt, and rock. Shaw is RLS' sole owner. RLS had been retained by Mega Industries as a subcontractor on the Project.

Shaw was injured at the Project site on September 7, 2007, when a telephone booth that was being moved by another RLS employee fell onto him. Shaw sustained multiple fractures of his feet and lower legs and, as a result, went through a number of surgical procedures, including the amputation of two toes.

Shaw filed a workers' compensation claim with the Division of Workers' Compensation against RLS and Mega Industries.[1] On December 15, 2009, the Division of Workers' Compensation approved a settlement between RLS and Shaw for his workers' compensation claim. The parties' stipulation stated that the settlement was:

Full and final settlement closing all claims for injuries to the claimant's right and left lower extremities and particularly resolves all injuries for the accident on or about September 15[sic], 2007. This settlement reflects overpayment of temporary total disability. This settlement closes any and all issues that could be raised, including but not limited to

---

1. Shaw's claim for compensation also named Walton Construction, another contractor on the Project, as an employer. Shaw later voluntarily dismissed Walton Construction from the workers' compensation proceeding, and it is not involved in the current suit.

nature and extent of disability, temporary total disability benefits, and past, present and future medical expenses.

RLS and/or its workers' compensation insurer were the sole source of the settlement payment to Shaw; neither Mega Industries nor its insurer paid any compensation. On August 1, 2011, the Division of Workers' Compensation dismissed with prejudice what remained of Shaw's claim for compensation for failure to prosecute. The Order of Dismissal listed both RLS and Mega Industries as employers against whom Shaw's claim was asserted.

On February 4, 2011, following the settlement of his workers' compensation claim with RLS, Shaw filed suit against Mega Industries and one of its employees, Eric Bachman, in the Circuit Court of Platte County, contending that their negligence caused his injuries. On July 16, 2012, the circuit court granted Mega Industries summary judgment, finding that Mega Industries was Shaw's statutory employer, and therefore that the workers' compensation system constituted Shaw's exclusive remedy against Mega Industries. On July 25, 2012, Shaw dismissed his claims against Bachman without prejudice. This appeal followed.

## Standard of Review

"Appellate review of summary judgment is de novo. The record is viewed in the light most favorable to the party against whom judgment was entered." *Roberts v. BJC Health Sys.*, 391 S.W.3d 433, 437 (Mo. banc 2013), citing *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993).

## Analysis

Although Shaw's Brief contains three separate Points Relied On, his Points are interrelated, and boil down to a single, fundamental issue: was Shaw's sole remedy against Mega Industries under the Workers' Compensation Law (the "Act"), even though Mega Industries paid no portion of the workers' compensation benefits Shaw received?

The resolution of this issue depends on the interaction of multiple provisions of the Act. First, § 287.120 specifies that, at least as a general proposition, the workers' compensation system provides workers with their exclusive remedy against their employers for workplace injuries. At the time of Shaw's injury, the statute provided:

1. Every employer subject to the provisions of this chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident arising out of and in the course of the employee's employment, and shall be released from all other liability therefore whatsoever, whether to the employee or any other person.

. . .

2. The rights and remedies herein granted to an employee shall exclude all other rights and remedies of the employee, his wife, her husband, parents, personal representatives, dependents, heirs or next kin, at common law or otherwise, on account of such accidental injury or death, except such rights and remedies as are not provided for by this chapter.

§ 287.120, RSMo Cum.Supp.2011.

The Act also provides that, at least in certain circumstances, a contractor will be deemed to be the employer of its subcontractors' employees, although the statutory employer's liability for workers' compensation benefits is secondary to the immediate employer's liability, and is extinguished if

the immediate employer carries workers' compensation insurance.

2. The provisions of this section shall not apply to the owner of premises upon which improvements are being erected, demolished, altered or repaired by an independent contractor but such independent contractor shall be deemed to be the employer of the employees of his subcontractors and their subcontractors when employed on or about the premises where the principal contractor is doing work.

3. In all cases mentioned in the preceding subsections, the immediate contractor or subcontractor shall be liable as an employer of the employees of his subcontractors. All persons so liable may be made parties to the proceedings on the application of any party. The liability of the immediate employer shall be primary, and that of the others secondary in their order, and any compensation paid by those secondarily liable may be recovered from those primarily liable, with attorney's fees and expenses of the suit. Such recovery may be had on motion in the original proceedings. No such employer shall be liable as in this section provided, if the employee was insured by his immediate or any intermediate employer.

§ 287.040.[2]

We interpret these statutory provisions by applying well-established canons of statutory construction.

The primary rule of statutory interpretation is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words used in their plain and ordinary meaning. The legislature is presumed to have intended what the statute says, and if the language used is clear, there is no room for construction beyond the plain meaning of the law. We will look beyond the plain meaning of the words of a statute only when the language is ambiguous or would lead to an absurd or illogical result.

*State ex rel. KCP & L Greater Mo. Operations Co. v. Cook*, 353 S.W.3d 14, 17–18 (Mo.App.W.D.2011) (en banc) (citations and internal quotation marks omitted).

Shaw recognizes that Mega Industries qualified as his statutory employer because of its contractor-subcontractor relationship with his immediate employer (RLS Trucking). He emphasizes, however, that Mega Industries faced no liability for his workers' compensation claim due to the final sentence of § 287.040.3, which specifies that "[n]o such [remote] employer shall be liable as in this section provided, if the employee was insured by his immediate or any intermediate employer." Shaw also emphasizes that § 287.120.1, which provides that the workers' compensation system constitutes a worker's exclusive remedy against his employer for injuries caused by workplace accidents, opens by specifying that "[e]very employer subject to the provisions of this chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter." Relying on the final sentence of § 287.040.3, and the opening clause of § 287.120.1, Shaw argues that "a contractor is only entitled to immunity [from common-law actions] if it is liable under the Act for benefits." Br. at 11.

The Missouri Supreme Court rejected this precise argument in *Bunner v. Patti*,

---

**2.** Unless otherwise indicated, statutory citations refer to the 2000 edition of the Revised Statutes of Missouri, as updated through the 2012 Cumulative Supplement. Where we cite to the most recent version of the Act, the provisions on which we rely are unchanged from the date of Shaw's accident in 2007.

343 Mo. 274, 121 S.W.2d 153 (1938). *Bunner* held that a more senior contractor was immune from common-law actions, even where it was not ultimately liable for payment of workers' compensation benefits. In *Bunner*, as here, an injured worker recovered workers' compensation benefits against his immediate employer, and then sued a more remote statutory employer for damages. The Supreme Court explained that it was faced with precisely the same question presented in this appeal:

We are, therefore, squarely confronted with the single question whether the employee of a subcontractor if negligently injured by the general contractor can sue the latter for damages at common law as a third person and at the same time collect compensation from his immediate employer under the Compensation Act—when the immediate employer carries liability insurance covering the casualty and all the other facts bring the case within the Compensation Act. The [employee] takes the affirmative on that proposition, contending that the last sentence of [what is now § 287.040.3] makes the remote employer a stranger to the employment or a "third person" within the meaning of [what is now § 287.150], so that he may be sued as an outsider.[3]

*Id.* at 155.

*Bunner* rejected the employee's argument that § 287.040.3, and its last sentence in particular, stripped the statutory employer of its immunity from civil suits:

[S]o far as the injured employee is concerned, the liability of the remote employers is not secondary. He can recover against them directly and primarily; it is their business to recoup off the immediate employer and if they do not they lose. In other words, the principal part of [§ 287.040.3] does not attempt to fix the liability so far as the person injured is concerned but deals with the liability *inter sese* of the persons who are liable to the persons injured.

But the last sentence of subsection (d)—stressed by [the employee]—then adds that no remote employer shall be liable as in the section provided if the injured employee was insured by his immediate or any intermediate employer. However, it does not say he shall no longer be deemed an employer, and that he shall be considered as outside the protection of the Act. The subsection deals with employers under various degrees of liability ranging from primary liability to non-liability and treats them all as being within the Act. There is no disclosure of any legislative intent to outcast a remote employer because he avails himself of a condition contained in the subsection, by requiring his subcontractors to carry liability insurance. Neither is there any discernible intent to prefer one class of employees over another, by permitting the employees of a subcontractor to recover from him compensation for injuries and at the same time sue the remote employer for negligently inflicting them; whereas the direct employees of the same remote employer, perhaps injured in the same accident, would be allowed compensation alone.

*Id.* at 156–57 (citations and internal quotation marks omitted).

*Bunner* noted that adoption of the employee's argument would lead to anomalous results. The Court observed that "the object of the [statutory employment doctrine] is to prevent the remote employ-

---

3. The statutory provisions actually cited in this passage were §§ 3308(d) and 3309, RSMo 1929. Section 3308(d), and the first sentence of § 3309, are worded identically to the corresponding present-day provisions.

er from avoiding liability under the Compensation Act through resort to the device of having the work done by irresponsible, independent subcontractors." *Id.* at 157. If the employee's argument was adopted, however, a statutory employer would be in a *worse* position if it acted properly (by hiring subcontractors who maintained workers' compensation insurance), than if it acted irresponsibly (by hiring uninsured subcontractors). If the subcontractors were insured, the statutory employer would be exposed to liability for common-law damages (although it could not be held liable for workers' compensation benefits). On the other hand, if the statutory employer hired subcontractors who *failed* to maintain insurance, the statutory employer "would only be liable for the compensation allowed by the Act." *Id.*

Finally, *Bunner* emphasized that, if the statutory employer were subject to liability in a civil action after the injured worker's immediate employer had paid workers' compensation benefits, the immediate employer would be subrogated to the employee's claim against the statutory employer; this would have the effect of making the statutory employer *primarily* liable for the worker's injury, contrary to the liability scheme established by § 287.040.3:

> If, as [the employee] contends, the remote employer can be sued at common law by virtue of the last sentence of [§ 287.040.3] when his subcontractor carries liability insurance and an employee of the latter is negligently injured by employees of the former, then under [§ 287.150] the subcontractor as immediate employer of the injured employee, by right of subrogation can bring the suit and recover the whole damage therein, retaining the amount he has paid out in compensation plus expenses, and turning over the excess to the employee. And yet under [§ 287.040.3] the immediate employer is the one primarily liable, and the remote employer is only secondarily liable, if at all (regardless of how the injury was caused so far as the statute provides) and can recover back from the immediate employer any compensation he (the remote employer) has paid the employee. In other words the immediate employer would recover from the remote employer compensation money for which he, himself, is primarily liable back to the remote employer.

*Id.*

The Court reaffirmed the *Bunner* decision in *Anderson v. Steurer,* 391 S.W.2d 839 (Mo.1965), in which an injured worker had again obtained workers' compensation benefits from his immediate employer, but then filed a common-law action against a more remote employer. *Id.* at 841. *Anderson* sets forth the reasoning of *Bunner* at length, including *Bunner*'s treatment of the last sentence of what is now § 287.040.3, and closes by explicitly stating that "[w]e reaffirm the views expressed in the *Bunner* case." *Id.* at 846. The Supreme Court adhered to the principles established by *Bunner* and *Anderson* in *State ex rel. MSX Int'l, Inc. v. Dolan,* 38 S.W.3d 427, 429–30 (Mo. banc 2001); *Vatterott v. Hammerts Iron Works, Inc.,* 968 S.W.2d 120, 121–22 (Mo. banc 1998); *Bailey v. Morrison–Knudsen Co.,* 411 S.W.2d 178, 180–81 (Mo.1967); and *Thompson v. Kroeger,* 380 S.W.2d 339, 342–43 (Mo. 1964).[4] In *MSX, Vatterott,* and *Bailey,* as here, the injured worker had obtained workers' compensation benefits from his immediate employer, but thereafter sought

---

4. *See also Augur v. Norfolk S. Ry. Co.,* 154 S.W.3d 510, 517 n. 6 (Mo.App.W.D.2005); *Sexton v. Jenkins & Assocs., Inc.,* 41 S.W.3d 1, 6–7 (Mo.App.W.D.2000); *Mays v. Penzel Constr. Co.,* 838 S.W.2d 1, 2 (Mo.App.E.D. 1992).

to recover common-law damages from the statutory employer.

■ Shaw contends that we are no longer bound by this precedent, because in 2005 the legislature amended the Act and added language specifying that "reviewing courts shall construe the provisions of this chapter strictly." § 287.800.1. By contrast, at the time of *Bunner* and the cases following it, the Act provided that "[a]ll of the provisions of this chapter shall be liberally construed with a view to the public welfare." § 287.800, RSMo 2000. As this Court has previously noted:

> Strict construction means that a statute can be given no broader application than is warranted by its plain and unambiguous terms. The operation of the statute must be confined to matters affirmatively pointed out by its terms, and to cases which fall fairly within its letter. A strict construction of a statute presumes nothing that is not expressed.

*Robinson v. Hooker,* 323 S.W.3d 418, 423 (Mo.App.W.D.2010) (citations and internal quotation marks omitted); *see also State ex rel. KCP & L,* 353 S.W.3d at 20.

Shaw argues that the transition from a liberal to a strict construction of the Workers' Compensation Law renders *Bunner* obsolete. The Missouri Supreme Court rejected this argument in *MSX,* however. As noted above, in *MSX*—as here—an injured employee first obtained workers' compensation benefits against his immediate employer, and then sued a more remote statutory employer to recover additional common-law compensation. The injured worker in *MSX* made precisely the same argument, based on the final sentence of what is now § 287.040.3, that Shaw makes here (and that was rejected in *Bunner*): that the final sentence "negat[ed] [the remote employer's] affirmative defense of being a statutory employer because … [the employee's] immediate

employer[ ] provided the worker's compensation benefits." 38 S.W.3d at 429. *MSX* rejected this argument, and held—consistent with *Bunner*—that a statutory employer was immune from common-law actions, even if the statutory employer faced no liability for workers' compensation benefits because the injured worker was insured by his immediate employer. Moreover, *MSX* explicitly stated that this holding was *not* dependent on the rule of liberal construction:

> It does not require a liberal application of the act to determine that [Employer] satisfies all the elements of a statutory employer. Moreover, section 287.040.[3] deals with the determination of who pays under the worker's compensation act, not the determination of statutory employment.

*Id.* at 430; *see also Thornsberry v. Thornsberry Invs., Inc.,* 295 S.W.3d 583 (Mo.App.S.D.2009) (applying *Bunner* and *Anderson* in case involving post–2005 injury; noting that § 287.040.3 determines the order of liability for worker's injury, and holding that immediate employer could not recover indemnification from more remote statutory employer).

■ Even if we were not bound by the pre–2005 decisions, we would reach the same result based on the plain wording of the relevant statutory provisions. Under § 287.040.2, Mega Industries was plainly Shaw's statutory employer. Further, while Mega Industries faced no *liability* to pay Shaw worker's compensation benefits under the final sentence of § 287.040.3 because Shaw's immediate employer carried workers' compensation insurance, this does not alter the fact that Mega Industries "shall be deemed to be the employer of" Shaw by operation of § 287.040.2. Section 287.120.1 specifies that Mega Industries—as Shaw's "employer"—"shall be released from all other liability [for personal injury

or death of the employee by accident arising out of and in the course of the employee's employment] whatsoever, whether to the employee or any other person." Actual payment of workers' compensation benefits is not a prerequisite for this immunity from common-law actions. Moreover, as *Bunner* recognized, if we were to permit Shaw to assert a common-law action against Mega Industries, RLS would be subrogated to that claim by operation of § 287.150; this would have the effect of turning the order of liability specified in § 287.040.3 upside-down.

Shaw argues that application of the exclusive-remedy provision in § 287.120.1 presumes that the employer entitled to immunity "shall be liable, irrespective of negligence, to furnish compensation [to the employee] under the provisions of this chapter." Because Mega Industries faces no workers' compensation liability to Shaw in this case, he argues that the immunity granted by § 287.120.1 is inapplicable here. But Mega Industries *was* subject to liability "to furnish compensation under the provisions of" the Act. The Act merely provides Mega Industries with a defense to liability in the specific circumstances of this case, because Shaw's immediate employer was insured.

■ The immunity provided by § 287.120 has never been interpreted to require that the injured worker actually receive workers' compensation benefits from the employer. On the contrary, "if an 'injury' comes within the definition of the term 'accident' as defined in section 287.020.2, then it is included within the exclusivity provisions of the act, and recovery can be had, *if at all,* only under the terms set out in the act." *Mo. Alliance for Retired Ams. v. Dep't of Labor & Indus. Relations,* 277 S.W.3d 670, 679 (Mo. banc 2009) (plurality opinion) (emphasis added). For example, prior decisions have held that civil lawsuits for the death of a worker were precluded by the exclusivity provisions of §§ 287.120.1 and .2, even where the Act did not require the payment of compensation because the deceased worker did not have dependents entitled to prosecute a workers' compensation death-benefits claim. *Page v. Clark Ref. & Mktg., Inc.,* 3 S.W.3d 385, 387–88 (Mo.App. E.D.1999); *Combs v. City of Maryville,* 609 S.W.2d 475, 476–78 (Mo.App.W.D. 1980). Those courts held that a remedy was "provided for" in the Act, § 287.120.2, even though the workers' compensation remedy was not available in the circumstances of a particular case.

■ There are many reasons why an employee may fail to recover worker's compensation benefits from his employer for an accidental workplace injury: a worker's evidence may fail to persuade the trier of fact; or an employer may successfully invoke a defense to liability (such as the untimely filing of a claim). But an employee's failure to prove up a winning workers' compensation claim does not make the employer liable for common-law damages. Instead, the Act's exclusivity provisions are only inapplicable with respect to "those employments specifically excluded from coverage under the Act [ ], those where the employee sustains a non-accidental injury on the job, or those where the injury was suffered while not engaged in the course of [the worker's] employment, or the like." *Combs,* 609 S.W.2d at 478; *see also Mo. Alliance for Retired Ams.,* 277 S.W.3d at 679 (plurality opinion) ("If the 'injury' is one that is not included within the term 'accident' as defined in the act, however, then under section 287.120.1 an employer shall not be liable to the employee under the act and the injury, therefore, is not subject to the exclusivity provisions of the act . . . ."). The fact that Mega Industries was not

actually liable to pay workers' compensation benefits in this case does not exclude it from the Act's exclusive-remedy provisions.

Finally, we note that Shaw's reliance on *Robinson v. Hooker*, 323 S.W.3d 418 (Mo.App.W.D.2010), is misplaced. In *Robinson* we held that the Act did not grant immunity to an injured worker's co-employees, because those co-employees did not meet the statutory definition of an "employer." [5] While *Robinson* generally observes that the Act grants immunity from civil lawsuits to employers "in exchange for [employers'] providing workers' compensation benefits," *id.* at 424, *Robinson* does not hold, or even suggest, that application of the exclusive-remedy provisions depends on an employer *actually paying* compensation. Instead, *Robinson* makes clear that immunity from suit "applies only to those who qualify as an 'employer' under the Act." *Id.* at 425. Here, Mega Industries *does* "qualify as an 'employer' under the Act," even thought it paid Shaw no workers' compensation benefits; therefore, recognizing that Mega Industries is immune from common-law actions is fully consistent with *Robinson*.

### Conclusion

We affirm the circuit court's judgment, which granted summary judgment to Respondent Mega Industries Corp.

All concur.

---

**5.** The legislature responded to the *Robinson* decision by enacting amendments to § 287.120.1 in 2012.